**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **MEGAN COLLINS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-17-433-RAW-SPS |
| | ) |
| **COMMISSIONER of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

The claimant Megan Collins requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was twenty-seven years old at the time of the administrative hearing (Tr. 46). She completed twelfth grade, and has worked as a medical assistant, personal care aid, car hop, and retail sales clerk (Tr. 21, 266). The claimant alleges inability to work since April 1, 2015, due to bipolar disorder, borderline personality disorder, and diabetes (Tr. 265).

## Procedural History

On April 17, 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ B.D. Crutchfield conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 13, 2017 (Tr. 12-23). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but that she had nonexertional limitations as follows. For her diabetes, she was to avoid unprotected heights, moving machinery, and other hazards. Additionally,

the ALJ determined that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a limited (occasional) work basis, and adapt to a work situation, but that she could not relate to the general public (Tr. 16). Finally, she found that the claimant should have no accessibility to medications that are not prescribed to her (Tr. 16). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because she there was work she could perform in the economy, *e. g.*, janitor, laundry worker, and production assembler (Tr. 21-23).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly account for her substance abuse, and (ii) failing to properly assess her credibility. As to the first contention, the claimant further contends that the ALJ failed to properly consider her impairments in light of the Listings and failed to properly account for all her impairments, specifically her mental impairments and their contributions to noncompliance. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner should be reversed.

The ALJ determined at step two that the claimant had the severe impairments of affective disorders and substance addiction disorders in partial remission (Tr. 15). The ALJ also found that the claimant's obesity was nonsevere, and listed other impairments alleged by the claimant (bipolar disorder, borderline personality disorder, diabetes, anxiety, panic attacks, insomnia, and post-traumatic stress disorder) without commentary as to severity or any further analysis (Tr. 15). The relevant medical evidence demonstrates that the claimant has a long and repeated history of inpatient mental health treatment for

suicidal ideation and depression, sometimes related to substance abuse and sometimes not. Counsel has attached as an exhibit to the Opening Brief a "Suicide Timeline,"[2] which indicates the claimant underwent a total of 137 days of inpatient treatment between 2013 and 2017, including two inpatient admissions in 2013, three inpatient admissions in 2014, six inpatient admissions in 2015 (including one admission for twenty-four days), seven inpatient admissions in 2016, and two inpatient admissions by April 2017.  *See* Docket No. 22, Ex. 1 & Administrative Record.  An August 2013 discharge diagnosis assessed the claimant with bipolar disorder, generalized anxiety disorder, panic disorder with agoraphobia, and insomnia (Tr. 360).  Her bipolar disorder diagnosis was repeated throughout the record (Tr. 428, 485, 489, 534, 536, 539, 543, 570, 736, 767, 907, 944), as well as her diagnosis of borderline personality disorder (Tr. 534, 539, 543, 570, 736, 767, 944, 1060).  She also has a history of substance abuse, including methamphetamine, and some of the inpatient stays were related to relapses of substance abuse (Tr., *e. g.*, 489, 636, 736, 944).

On June 25, 2015, the claimant underwent a psychiatric evaluation while inpatient at 12 & 12, Inc., an addiction recovery center in Tulsa, Oklahoma.  She was assessed with opiate and amphetamine dependence, alcohol and nicotine dependence, and bipolar II

---

[2] The Commissioner asserts that the claimant has "skirted" the local rules requirements regarding brief lengths, which requires an indexed table of contents for briefs longer than twenty-five pages.  *See* L. Civ. R. 7.1(c).  The undersigned Magistrate Judge agrees that counsel has disregarded this limitation but chooses to instead determine the case on the merits.  Although Counsel is instructed that a brief in compliance with the rules should be submitted in the future, the undersigned Magistrate Judge nevertheless takes into account the "Suicide Timeline" as factually useful in this particular instance but cautions against such practice in the future without compliance with this Court's local rules.

disorder and social phobia (Tr. 636). The evaluator administered a number of screening tests, which indicated, *inter alia*, that the claimant was at imminent risk of continued substance use or mental health problems with dangerous consequences without 24-hour structured monitoring and structured supported, and that she showed a severity profile indicative of problems in employment, substance dependence, family/social, and psychological areas of functioning (Tr. 637).

On January 31, 2017, the claimant presented to Carl Albert Community Mental Health Center via the police. She had initially presented to a hospital with complaints of IBS, but then began reporting suicidal thoughts (Tr. 1059). She was not admitted inpatient at this time, and apparently became "irritable and argumentative" upon learning this information (Tr. 1060). She was assessed with depressive disorder NOS, cannabis dependence, and malingering, as well as borderline personality disorder, and she was described as having a desire to be inpatient whenever possible (Tr. 1060). The claimant was then admitted on April 5, 2017 with depression and suicidal thoughts but discharged against medical advice on April 8, 2017 (Tr. 1087). Her discharge diagnoses included bipolar disorder type 1, PTSD, borderline personality disorder, and diabetes mellitus (Tr. 1087).

The ALJ did not send the claimant for a consultative evaluation in this case. State reviewing physician Randy Cochran, Psy.D., found the claimant markedly limited in the three typical areas of ability to understand and remember detailed instructions, carry out detailed instructions, and interact with the general public (Tr. 94-95). He concluded that she could perform simple tasks with routine supervision, relate to supervisors and peers on

a limited work basis, and adapt to a work situation, but that she could not relate to the general public (Tr. 95). On reconsideration, Edith King, Ph.D., largely agreed with Dr. Cochran's assessment, with minor variations. Notably, Dr. King indicated that the claimant was only moderately limited in the first two areas while markedly limited in the ability to interact with the general public, but additionally that the claimant was moderately limited in the ability to maintain attention and concentration for extended periods (Tr. 126-127). She then made the same conclusions Dr. Cochran did, stating that "[p]eriods of sobriety and compliance result in mild to moderate mental symptoms." (Tr. 127).

In her written opinion at step three, the ALJ stated that she considered Listings 12.04, 12.06, and 12.08. In assessing the "paragraph B" criteria for these Listings, she determined that the claimant had mild limitations in understanding, remembering, and applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, and maintaining pace; and only mild limitations in adapting or managing oneself (Tr. 16). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.04, 12.06, and 12.08 (*effective* March 27, 2017 to August 21, 2017). Because she did not find the claimant had an extreme limitation or two marked limitations, she found the criteria not satisfied (Tr. 16). At step four, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record, including a fair summary of the claimant's history of inpatient treatment. She then stated that "[t]he evidence in this case reveals when the claimant is medication and treatment compliant her depressed and anxious symptoms are well controlled. However, when she uses alcohol and drugs her anxious and suicidal symptoms are exacerbated." (Tr. 19). She further found the claimant not credible and

stated that the claimant's description of symptoms and limitations "has generally been inconsistent and unpersuasive" (Tr. 20).

The claimant asserts that the ALJ erred in formulating her RFC, and the undersigned Magistrate Judge agrees. "[T]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because [s]he has not linked h[er] RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

As an initial matter, the ALJ adopted the state agency psychologist's opinion as to the claimant's psychologically-based limitations, but neither the ALJ nor the state agency psychologist linked any evidence in the record to show how such limitations account for the claimant's severe mental impairment of affective disorder, as well as her bipolar disorder and borderline personality disorder. *See, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a

-8-

wide range of sedentary work."). Additionally, in finding the claimant's medication effectively controlled her mental impairments, the ALJ failed to explain how repeated and multiple inpatient treatments for over four years established any sort of time frame for the claimant's medications to effectively control her impairments. It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of her own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

The undersigned Magistrate Judge notes that although the ALJ *did* include some limitations related to the claimant's "mental impairments" in the RFC, the ALJ has connected no evidence in the record to instruct this Court as to how such a limitation accounts for each of the claimant's severe mental impairment of affective disorders, as well as the repeatedly documented diagnoses of bipolar disorder, borderline personality disorder, and anxiety. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). Moreover, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing her RFC. Both of these errors require reversal. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir.

2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

The ALJ compounded these errors when she further failed to consider whether the claimant had an acceptable reason for failing to follow her prescribed treatment, which could include her affective disorders, bipolar disorder, and borderline personality disorder. In considering the impact of failure to follow treatment, the ALJ must follow a four-part test: (i) whether treatment would have restored the claimant's ability to work, (ii) whether treatment was prescribed, (iii) whether treatment was refused, and (iv) whether the excuse was justified. *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987), *citing Weakley v. Heckler*, 795 F.2d 64, 66 (10th Cir. 1986), *quoting Teter v. Hecker*, 775 F.2d 1104, 1107 (10th Cir. 1985). In this case, however, the ALJ failed to discuss *any* of these factors in relation to her finding that the claimant simply needed to be compliant with medication to effectively manage her impairments. This is a particularly glaring omission in light of the mental impairments and inpatient hospitalizations characterizing this claimant's medical record. *See, e. g., McCleave v. Colvin,* 2013 WL 4840477, at *6 n. 6 (W.D. Okla. Sept. 10, 2013) (requiring the ALJ to address on remand whether a claimant's bipolar disorder

was an acceptable reason for noncompliance with prescribed psychotropic medications), *citing* 20 C.F.R. §§ 404.1530(c), 416.930(c) *and Jelinek v. Astrue,* 662 F.3d 805, 814 (7th Cir. 2011) ("ALJs assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference."). *See also Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006) ("What is particularly troublesome about the ALJ's failure to consider Ms. Salazar's borderline personality disorder is that it may account for her abuse of drugs and alcohol, as well as her suicidal conduct and self-mutilation. . . . Specifically with respect to substance abuse, suicidal conduct, and self-mutilation, individuals with borderline personality disorder display [] recurrent suicidal behavior, gestures, or threats, or self-mutilating behavior . . . Moreover, [b]orderline [p]ersonality [d]isorder often co-occurs with Mood Disorders [such as depression], and when criteria for both are met, both may be diagnosed. The ALJ's failure to consider Ms. Salazar's borderline personality disorder, singly and in combination with her other impairments, requires that we reverse.") (internal citations and quotations omitted).

Indeed, the ALJ devoted much of her discussion at step four to questioning her determination at step two, *i. e.*, the severity of the listed impairments. *See*, 2013 WL 4840477, at *6 n.6 ("Additionally, the ALJ found Plaintiff's subjective complaints not credible in part because of evidence of her noncompliance with prescribed psychotropic medications. However, the ALJ did not consider whether Plaintiff had an acceptable reason for failing to follow her prescribed treatment, *which could include her bipolar disorder*.") [emphasis added], *citing* 20 C.F.R. §§ 404.1530(c), 416.930(c) *and Jelinek v.*

*Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) ("ALJs assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference."). This was an improper assessment where, as here, the ALJ appeared to devote much of her time at step four to pointing out the inconsistencies in the record rather than determining the claimant's RFC. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the

ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

      **DATED** this 28th day of February, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**